**UNITED STATES of America,**
**Appellant,**

v.

**M. B. KALMUTZ and Rose F. Kalmutz,**
**Appellee.**

**No. 19406.**

United States Court of Appeals
Fifth Circuit.
Oct. 30, 1962.

**438**

Louis F. Oberdorfer, Asst. Atty. Gen., John B. Jones, Jr., Acting Asst. Atty. Gen., Lee A. Jackson, Harry Baum, George F. Lynch, Attys., Dept. of Justice, Washington, D. C., Edward F. Boardman, U. S. Atty., Lavinia L. Redd, Asst. U. S. Atty., Miami, Fla., for appellant.

William R. Frazier, Hill & Frazier, James P. Hill, Jacksonville, Fla., for appellee.

Before JONES and BELL, Circuit Judges, and ESTES, District Judge.

ESTES, District Judge.

This is another appeal from a judgment ordering a tax refund in a case in which the Government contends that profits derived from the sale of taxpayer's interest in certain tracts of land were taxable as ordinary income rather than as capital gains.[1] This case was tried to a jury, which returned a verdict in favor of taxpayer. The jury found that the properties sold by taxpayer were not "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business," within the meaning of Section 1221 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 1221.

The Government asserts that the case should be remanded for a new trial because of alleged error in excluding evidence of Atlantic Realty Investment Corporation's brochure and a small portion

1. Lobello v. Dunlap (5 Cir. 1954), 210 F.2d 465, 468, and the cases cited therein; Barrios' Estate v. C. I. R. (5 Cir. 1959), 265 F.2d 517, 519, and the cases cited therein; Gamble v. C. I. R. (5 Cir. 1957), 242 F.2d 586, 590; and Cole v. Usry (5 Cir. 1961), 294 F.2d 426, 427.

of the testimony of its former president, Goldstein, concerning listings in the brochure and some cumulative evidence of the percentage of taxpayer's income that had been derived from real estate sales, and of the source of the money with which taxpayer purchased the properties involved.

Taxpayer, M. B. Kalmutz and wife[2], have been residents of West Palm Beach, Florida, for some 24 years. During this period Mr. Kalmutz operated a small plumbing supply business, the nature and necessities of which required him to, and he did in fact, devote practically all of his time and energies throughout the three taxable years (1955, 1956 and 1957) involved in this suit.

From August, 1953, through June, 1957, taxpayer purchased as speculative investments and later sold interests of 1% to 10% in certain unimproved lands situated in the State of Florida, upon the suggestion and recommendation of his nephew, attorney Levy. In the beginning, fee title to the land was taken in the names of the several owners as tenants in common; but as time went on and the transactions became more involved title was taken in the name of attorney Levy, as agent or trustee of the various owners. No improvements were ever made on any of the properties, there was no platting, installation of streets or utilities, and no development of any kind of the property to increase its value; taxpayer never advertised it. Taxpayer's investment in the land purchases was made by sending a check to attorney Levy to cover taxpayer's share of the purchase price, and upon sale of the property taxpayer would receive a copy of the closing statement and a check for his share of the proceeds.

Atlantic Realty Investment Corporation, an independent Palm Beach brokerage firm[3] acting merely as a broker endeavoring to earn commissions, handled the details of most of the sales of the properties. Taxpayer had no interest in and no occupational undertaking or connection with Atlantic Realty. Atlantic Realty, "like every other broker" in the area, made efforts through advertising and otherwise to effectuate the sale of these and other properties "with or without any agreement" with landowners as to listing—in this case without agreement. This was normal operating procedure in Atlantic Realty's own business of generating sales to earn commissions, over which taxpayer had no control.

■ The materiality of the proffered brochure of Atlantic Realty was not shown. This pamphlet shows on its face that it contains 1958 listings, while the last year involved in this case is the fiscal year ending October 31, 1957. There was no showing that taxpayer had anything to do with its contents or publication, and no foundation was laid for its introduction in evidence. Finally, there is nothing in the brochure relating to the properties involved that is not cumulative of other evidence of the selling activities of Atlantic Realty in effecting the sale of most of the properties involved; and no prejudicial error resulted from its exclusion. For the same reason, the exclusion of a portion of witness Goldstein's testimony concerning the listings presents no reversible error.

■ Appellant's assertions of reversible error in the Court's refusal to admit some of the testimony offered as to the percentage of taxpayer's income derived from his land sales and repetitious inquiry as to the source of the money used by taxpayer in purchasing the properties involved are without merit, since the record[4] reflects that such testimony would have been cumulative of other

---

2. Filed joint returns. Otherwise, references to "taxpayer" mean M. B. Kalmutz.

3. The activities of Atlantic Realty "[were] not enough to put taxpayer into the real estate business." Fahs v. Crawford (5 Cir. 1947), 161 F.2d 315; Smith v. Dunn (5 Cir. 1955), 224 F.2d 353.

4. Including the tax returns, schedules, and taxpayer's testimony that he took profits from "a good many" sales and used it in the purchase of other property.

evidence of the same kind bearing on the same points.

 "The propriety of admitting evidence which is merely cumulative is a matter for the determination of the court in the exercise of sound discretion. Error is not predicable on its admission or its exclusion unless an abuse of discretion is established." 4 Jones on Evidence, 5th Ed., § 981.[5]

Under the tests applied by this Court in determining whether the properties in question were held by the taxpayer primarily for sale to customers in the ordinary course of his business[6] and the evidence in this record, the Trial Court properly rendered judgment for taxpayer on the jury finding that the property was not held by taxpayer for sale in the ordinary course of his business.

The extended argument of Appellant on the facts overlooks the effect of the jury verdict. The applicable law is thus stated:

"We must sustain a general or a special jury verdict when there is some evidence which the jury might have believed, and when a reasonable inference from that evidence will support the verdict * * *."[7]

"[I]t is only where there is lacking any evidence of substance upon which reasonable men could reach the result represented by the verdict that a judge may interfere. This was not such a case."[8]

"Where a jury has tried the matter upon correct instructions, the only inquiry is whether it cannot be said that reasonable men could reach differing conclusions on the issue."[9]

"[W]e think this is a conclusion on which men may reasonably differ, the very sort of question on which a jury verdict ought not to be disturbed."[10]

The jury returned its verdict upon substantial evidence in a fair trial upon proper instructions, and the record contains no reversible error. The judgment appealed from is

Affirmed.

---

5. To the same effect, 4 Jones on Evidence, 5th Ed., § 7 and § 898; Royal Exch. Assur. v. Graham & Morton Transp. Co., 7 Cir., 166 F. 32.

6. Cases cited in footnote 1.

7. Orvis v. Higgins, 2 Cir., 180 F.2d 537, 539, cert. den. 340 U.S. 810, 71 S.Ct. 37, 95 L.Ed. 595.

8. Binder v. Commercial Travelers Mutual Accident Assoc. of America, 2 Cir., 165 F. 2d 896, 901.

9. Commissioner v. Duberstein, 363 U.S. 278, 290, 80 S.Ct. 1190, 1199, 4 L.Ed.2d 1218.

10. Jackson v. King (5 Cir.), 223 F.2d 714, 718.