Barbara A. McCLURE, Plaintiff-Appellee Cross-Appellant,

v.

MEXIA INDEPENDENT SCHOOL DISTRICT, Defendant-Appellant Cross-Appellee.

No. 83–1836.

United States Court of Appeals, Fifth Circuit.

Jan. 14, 1985.
Rehearing and Rehearing En Banc Denied Feb. 12, 1985.

Sleeper, Johnston, Helm & Fontaine, Minor L. Helm, Jr., Patsy A. Pool, Waco, Tex., for defendant-appellant cross-appellee.

Bob Hall & Assocs., Robert E. Hall, Houston, Tex., for plaintiff-appellee cross-appellant.

Before GARZA, RANDALL, and TATE, Circuit Judges.

TATE, Circuit Judge:

The defendant employer appeals from judgment against it and in favor of a former employee on related civil rights and employment-discrimination claims. The defendant's principal contention is that the district court erred in admitting into evidence an Equal Employment Opportunity Commission determination and file. We affirm. We find no error in the admission of the determination itself, Fed.R.C.Evid. 803(8)(C), but that the admission of the entire file was erroneous, although harmless under the circumstances. On the plaintiff employee's cross-appeal, we remand for further consideration and determination of the attorney's fees to be awarded her.

*Factual Context*

Barbara McClure began working for Mexia in 1961, when she was hired as secretary-bookkeeper to Hugh Pendleton, who was then the business manager. When Pendleton retired in 1972 the plaintiff McClure sought the position of business manager from Superintendent McBay. Although McBay recommended that she be hired as the business manager, the school board hired the plaintiff McClure only for the position of "Bookkeeper/Office Manager" for $7,800 annual salary. Pendleton's annual salary had been $9,600.

When a statewide pay schedule was created in 1975 for noninstructional employees, the school district rated McClure's job as "Aide III" rather than "10–B," the higher paying classification for business managers.[1] McClure believed that she had

---

1. To be classified as a "10–B," an employee must have had a college degree. However, a grandfather clause allowed all those who had been employed in 10–B positions before the pay

been performing the job of business manager and that the "Aide III" classification was motivated by sex discrimination. She therefore filed a complaint with the EEOC in 1979.

The EEOC held a fact-finding conference on the discrimination charge in May 1979. The EEOC determined that there was reasonable cause to believe that Mexia discriminated against McClure because of her sex by classifying her as an Aide III and by paying her less than Mr. Pendleton had been paid. In June 1979, a new individual was hired to manage Mexia's business affairs. In July 1979, McClure was informed by Mr. Sims, the new superintendent, that her position was being terminated as part of an administrative reorganization and that she would not be rehired for the following year.

Thereupon, in October 1979, McClure filed a second EEOC charge, alleging retaliatory discharge. The EEOC subsequently issued a second determination that there was reasonable cause to believe that this charge also was justified.

The plaintiff McClure then instituted the present suit.

*Procedural Context and Issues on Appeal*

The complaint of the plaintiff, Barbara McClure, asserts two causes of action against her former employer, the Mexia Independent School District ("Mexia"). Both causes of action are based upon Mexia's termination of McClure's employment in retaliation for her filing of a charge with the Equal Employment Opportunity Commission ("EEOC") that Mexia had discriminated against her on the basis of her sex in refusing to give her the title of Business Manager and to pay her commensurately.

The first cause of action, founded upon 42 U.S.C. § 1983, is based upon Mexia's retaliation against McClure for exercising her rights of free speech and redress of grievances in violation of rights afforded her by the First and Fourteenth Amendments. This was tried to a jury, which returned a verdict in her favor and awarded her some $26,000 back pay and $47,000 damages for mental distress.

McClure's second cause of action, founded upon Title VII ("Equal Employment Opportunities") of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., is based upon Mexia's termination of her services because she had filed the EEOC sex-based discrimination charge, being a violation of the statutory prohibition against discharge for such reason, 42 U.S.C. § 2000e–3(a). Trial of this cause of action was held before the district judge simultaneously with the jury trial of the related § 1983 claim. The district court found that, indeed, McClure's employment had been terminated because she had exercised her right to file an employment-discrimination charge with the EEOC. The court therefore entered judgment enjoining Mexia from refusing to reinstate McClure to her position as Business Manager. The district court also assessed Mexia with $13,000 attorney's fees, 42 U.S.C. § 2000e–5(k); it thus reduced the requested amount sought by her of some $32,000 attorney's fees.

■ On its appeal, Mexia does not substantially attack the jury findings nor the district court's findings of fact and conclusions of law that support McClure's basic award. Rather, Mexia principally contends that the district court erroneously admitted into evidence both (a) the EEOC determination of reasonable cause for retaliatory discrimination and (b) the entire EEOC file, and that reversal for re-trial should be ordered because this inadmissible and prejudicial evidence infected the determinations of the trier(s) of fact of the two causes of action.[2] For reasons set forth in I *infra*,

schedule was adopted, but who did not have college degrees, to be classified as 10–B's. McClure, who did not have a college degree, argued in the district court that the grandfather clause applied to her.

2. Mexia also contends that the district court erroneously usurped the exclusive power of appointment by Mexia by ordering McClure reinstated as Business Manager, a position to which Mexia had never appointed her. The district court found, on well-supported findings, that McClure had de facto exercised the functions of

we find no error as to (a), and, although we find the district court erred as to (b), we find that the error was harmless in the light of the entire record.

By her cross-appeal, the plaintiff McClure contends that the district court did not adequately compensate her attorneys and that, without adequate explanation, the court reduced the itemized and substantiated statement of attorney's fees, as proffered, to an arbitrarily set lower amount. For reasons set forth in II *infra,* we find merit to this contention, and we remand.

## I. *Admission of EEOC Determination and File*

### A. *Admissibility*

Under circumstances to be set forth more fully, the district court admitted into evidence the EEOC determinations of reasonable cause, as well as the entire EEOC file. The district court did so under the purported authority of *Smith v. Universal Services, Inc.,* 454 F.2d 154 (5th Cir.1972) and of *Plummer v. Western International Hotels Company, Inc.,* 656 F.2d 502 (9th Cir.1981) (applying the *Smith* holding in a jury-trial setting). Under the Federal Rules of Evidence, effective in 1975, an EEOC determination or factual finding is admissible in a civil action, as an exception to the hearsay exclusion rule, if it falls within the admissibility provision of Rule 803(8)(C) as "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."

Prior to adoption of the Federal Rules of Evidence, in *Smith v. Universal Services,*

*Inc.* (5th Cir.1972) this court held, in a Title VII non-jury discrimination case, that "the EEOC report, consisting of a summary of the charges, a brief review of the facts developed in its investigation, and its findings of probable cause that violations exist", *id.,* 454 F.2d at 157, was admissible in evidence. The court found that such a report, although not binding on the court, was of sufficient reliability—as the product of agency action based upon investigation by those trained in the area of discriminatory employment action—as to be "highly probative of the ultimate issue involved in such cases", and that "[i]ts probative value, we believe, outweighs any possible prejudice to defendant." *Id.* The panel reversed the district court for its failure to admit the report into evidence.

In *Smith,* the entire court denied a petition for rehearing en banc, 454 F.2d 160, over the strong dissent of six judges that EEOC reports had "very questionable probative value" and that they "may be prejudicial, irrelevant, and unreliable." *Id.*

After adoption of the Federal Rules of Evidence, we held that the district court erred in failing to admit under Rule 803(6) into evidence an EEOC investigative report and determinations. *Garcia v. Gloor,* 618 F.2d 264, 272 (5th Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981). *See also Falcon v. General Telephone Company of the Southwest,* 626 F.2d 369, 383 n. 20 (5th Cir.1980), vacated on other grounds, 450 U.S. 1036, 101 S.Ct. 1752, 68 L.Ed.2d 234 (1981), on remand, 647 F.2d 633 (5th Cir.1981); *Peters v. Jefferson Chemical Company,* 516 F.2d 447, 450 (5th Cir.1975).[3]

that office and had been denied the title allegedly because of gender-based discrimination, and that she was terminated in retaliation for so asserting in her EEOC charge. We find little merit to Mexia's contention. Reinstatement is an appropriate equitable remedy for a discharge in violation of Title VII, *Garza v. Brownsville,* 700 F.2d 253, 255 (5th Cir.1983), since one of the purposes of Title VII is to make persons whole for injuries suffered from unlawful employment discrimination, *Franks v. Bowman Transportation Company, Inc.,* 424 U.S. 747, 770–78, 96 S.Ct. 1251, 1266–70, 47 L.Ed.2d 444

(1976). Mexia cites no employment-discrimination jurisprudence (and no other pertinent authority) in support of its contention that the reinstatement remedy here afforded was not appropriate equitable relief within the discretion of the district court under the facts shown.

**3.** In *Garcia,* the error was held to be harmless, however, because, under the facts of that case, admission of the EEOC report would not have added appreciable weight to the contention of discrimination.

In *Dickerson v. Metropolitan Dade County,* 659 F.2d 574, 579 (5th Cir.1981), a non-jury Title VII retaliation suit, we described *Smith* as holding "that the district court was obligated to admit into evidence the EEOC investigative report and findings because the probable value outweighed any possible prejudice to the employer." However, in affirming the dismissal of the plaintiff's retaliation claim, we rejected his claim that, in addition to the report, he was entitled to "admission into evidence of all testimony relating to an EEOC investigation." *Id.*

Thus, under precedents of this circuit, EEOC determinations and findings of fact, although not binding on the trier of fact, are admissible as evidence in civil proceedings as probative of a claim of employment discrimination at issue in the civil proceedings. However, neither under the precedents nor under Rule 803(8)(C) is the entire EEOC file admissible.

This circuit jurisprudence, however, arose in non-jury Title VII litigation, when the precise issue was whether the EEOC-determined employment discrimination had in fact occurred. Here, arguably distinguishably, the EEOC determinations were sought to be introduced in a trial by jury of a civil rights § 1983 claim (which had, however, been consolidated for trial with a non-jury Title VII trial).

■■■ Nevertheless, Fed.R.Evid. 803(8)(C) applies as an exception to the hearsay rule in both jury and non-jury trials. Furthermore, the EEOC determinations of reasonable cause—that the plaintiff had been discharged in retaliation for her having filed her sex-discrimination charge, and that she had been denied the Business Manager title as a result of sex-discrimination—were relevant to issues posed by her § 1983 suit, namely, that the retaliatory discharge had been primarily motivated by her exercise of her right to complain of sex-discrimination. *See* Fed.R. Evid. 401:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more

probable or less probable than it would be without the evidence.

■■■ Relevant evidence may be excluded, of course, "if its probative value is substantially outweighed by the danger of *unfair* prejudice", Fed.R.Evid. 403 (emphasis added). However, in *Smith,* rejecting contentions of undue prejudice in the admission of this "highly probative" evidence, we held that " '[p]rejudicial' cannot be equated with 'harmful' in all cases; rather, it connotes 'harmful' plus 'non-probative' ". *Smith, supra,* 454 F.2d at 157. If the EEOC determination of employment-discrimination is so "highly probative" of such issue "that [it] outweighs any possible prejudice to defendant", *id.,* in non-jury cases, we can see no reason why, absent special circumstances, it is not equally so in jury cases.

The Ninth Circuit so concluded in *Plummer v. Western International Hotels Company, Inc.,* 656 F.2d 502, 504–05 (9th Cir.1981), based largely on the reasoning of our fifth circuit decision in *Smith, supra.* In *Plummer,* where a Title VII claim had been joined with a civil rights § 1981 claim for trial before a jury, the Ninth Circuit reversed the district court for its failure to admit such probative evidence, and it remanded for a new trial.

Of course, the defendant may properly contend that the EEOC determination is nevertheless inadmissible upon showing that "the sources of information or other circumstances indicate the lack of trustworthiness", Rule 803(8)(C); but here, in the trial court (*see* note 4 *infra*), the defendant Mexia did not so contend. Further, as *Plummer, supra,* points out, the defendant is free to present evidence refuting the findings of the EEOC or point out deficiencies in the same, with regard to the weight, if any, to be given by the trier of fact to the EEOC determination. 656 F.2d at 505 n. 9.

B. *The Admission of the EEOC determinations and file in the present case.*

The admission into evidence of the EEOC determinations and file occurred under the following circumstances:

Prior to trial, the plaintiff had submitted a list of proposed exhibits, to which the defendant filed a list of written objections to some of them. With regard to the EEOC file (exhibit P–102), the gravment of the defendant's objection, (R. I, p. 135), as re-urged by it on the first day of the trial was that it was not admissible because the agency determination "invades the province the jury." Tr. 1–5. (Admittedly, however, the defendant successfully objected on hearsay and other grounds to newspaper articles, minutes, and correspondence, which had been independently listed as proposed exhibits, and which were in some instances duplicated within the bulk of the 89-page agency file.) The district court initially excluded the EEOC conclusions and documents from evidence. Tr. 1–18, 19.

On the next day of the trial, being furnished additional authority, specifically *Smith* and *Plummer, supra,* that the EEOC determinations were admissible in a jury trial, the district court reconsidered its ruling and decided to let the exhibit in on the basis of "the reasoning in *Smith v. Universal Services, Inc.* [454 F.2d 154 (5th Cir.1972)]," adding that "while I disagree with it completely, it is still Fifth Circuit law." Tr. 2–4.

▮ In the context of the objection, the decisions cited, and the discussion, the district court's ruling did not do more, we think, than reject the defendant Mexia's principal argument that the EEOC determinations were not admissible at a jury trial, with the district court accepting *Smith*'s reasoning that such determinations were admissible and probative with regard to an employment-discrimination issue. We are unable to accept Mexia's construction of the record as indicating that the district court misconstrued *Smith* as depriving it

of any discretion whatsoever in the admission of the agency determinations, without regard to any shown lack of trustworthiness. Nor did Mexia raise any issue then of the lack of trustworthiness of these particular agency determinations, basing its objection primarily to the contention of the general inadmissibility in a jury trial of such agency determinations.[4]

▮ Subsequently in the trial, the EEOC file (Exhibit 102) was introduced into evidence, Tr. 2–94, but to the jury was read only the concluding paragraphs of the EEOC reasonable-cause determinations. Tr. 2–96, 97. No reference was made at that time to any other of the contents of the EEOC file. However, apparently the jury took with it into the jury conference the voluminous documentary exhibits, including the 89-page EEOC file. Tr. 3–68.

Nevertheless, as Mexia points out, the effect of the district court's ruling was not only to admit the EEOC determinations and findings of fact, generally admissible under *Smith* and Rule 803(8)(C), but also the entire EEOC file. This file included documents not admissible under the terms of Rule 803, and which, Mexia contends, were highly prejudicial. Nor are we willing to say, in view of Mexia's previous objections to this type of material, that it waived its objection to the admissibility of the entire EEOC file (as compared with its overruled objection to the EEOC determinations themselves) by failing at the time to request the district court to limit its ruling to the portions of the EEOC filed admissible under *Smith* and the Rule—although, had Mexia done so, the district court most probably would have so limited its ruling, in view of its prior rulings when some of the items were sought to be introduced independently of their presence in the EEOC file.

---

**4.** On appeal, Mexia devotes a substantial part of its brief to citing arguments and literature that EEOC determinations under its then Rapid Charge procedures (such as produced the present determinations) were less than thorough and reliable and that, therefore, these determinations should not have been admitted. This argument, first raised on appeal, will not be considered. Further, at least some of the

argument essentially questions the ruling of *Smith* and succeeding fifth circuit jurisprudence as to the general admissibility of such EEOC determinations. *See, e.g., Garcia v. Gloor,* 618 F.2d 264, 272 (5th Cir.1980) (investigative report and determinations of the EEOC admissible under Fed.R.Evid. 803(8)(C). Under the law of the circuit, one panel is not free to disregard prior precedents of the circuit.

The admission into evidence of the entire EEOC file, however inadvertent, was thus erroneous.

As to the non-jury Title VII claim tried by the judge, the error was clearly harmless. The district court in nowise relied upon the contents of the EEOC file in its findings of fact, and the competent evidence in the record clearly supported the findings of fact of the district court.[5] *Goodman v. Highlands Insurance Company*, 607 F.2d 665, 668 (5th Cir.1979).

## C. *Harmless error in jury trial?*

A much closer issue, however, is presented as to whether the admission of the entire EEOC file was harmless in the jury trial of the § 1983 claim. Nor can we suppose that, in view of the lack of reference at the trial itself to the inadmissible EEOC file contents, or in view of the short period of jury deliberations (1:30 PM to 3:15 PM), that the jury did not in fact examine the voluminous documentary exhibits sent into the jury room for its deliberations, however likely that supposition might be.

The defendant Mexia contends that certain inadmissible items in the EEOC file were highly prejudicial. This contention is

persuasively advanced. Nevertheless, on review of the entire record, we find that the matters—principally the plaintiff McClure's defacto status or not as business manager, and whether the denial of the title to her was based upon her sex—were strongly proved by testimony and by documentary evidence properly admitted, and that therefore this error was harmless.[6]

Fed.R.Civ.P. 61 provides:

No error in either the admission or the exclusion of evidence ... is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice....

The improper admission of evidence that is merely cumulative on matters shown by other admissible evidence may be harmless error. *Hansen v. Johns-Manville Products Corporation*, 734 F.2d 1036, 1040 (5th Cir.1984); *Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 307 (5th Cir.1978); *Stancill v. McKenzie Tank Lines*, 497 F.2d 529, 537 (5th Cir.1974); *Yellow Bayou Plantation Inc. v. Shell Chemical, Inc.*, 491 F.2d 1239, 1243 (5th Cir.1974).

We hold that the portions of the EEOC file to which Mexia objects are merely cu-

---

**5.** The finding that Mexia discharged McClure in violation of 42 U.S.C. § 2000e–3 was supported by findings of fact such as the following:

    (1) Only after the fact-finding conference, did Superintendent Sims indicate that he could no longer work with McClure.

    (2) Shortly after the fact-finding conference, Mexia hired a new individual to manage its business affairs, and McClure was discharged.

These and other corroborative findings were supported by admissible testimony at trial.

**6.** Specifically, Mexia objects to newspaper articles referring to McClure as the business manager, notes and letters written by McClure, hearsay statements by third parties, administrative regulations, in addition to the EEOC determination of just cause to believe McClure may have been retaliatorily discharged. (T 1–3—1–6)

    In its reply brief on appeal, Mexia spells out the allegedly prejudicial items concerned as (a) newspaper articles (referring to McClure as business manager—documentary evidence properly admitted at the trial and other testimony

shows she was so referred to), (b) McClure's own notes (her own testimony at trial explained them), and (c) four items by an EEOC investigator as to what had "really happened" at the fact-finding conference and his evaluation of McBay's attitude. Reply brief, pp. 8–9. The last four (c) items initially gave us concern. However, former Superintendent McBay, summoned by plaintiff to testify at the trial as an adverse witness, testified briefly without contradiction in the record, Tr. 1–78–80, as to the conference and his anger at the EEOC investigator's alleged partiality. McClure herself also testified briefly as to the fact-finding conference, Tr., 1–165–67; her factual account noted McBay's comments at the conclusion of the meeting that the EEOC was discriminating against Mexia, without herself evaluating the EEOC's attitude. It is apparent that the conduct of the EEOC fact-finding conference was of peripheral significance, if any, in the fact-trier's determination that McClure was discharged because she had provoked it by her charge to the EEOC that Mexia had denied her the Business Manager title because of her sex.

mulative and that the admission of them into evidence is therefore harmless error. This is not a case where the jury was required to reach a verdict based solely on the credibility of the witnesses. There was substantial admissible documentary and other evidence from which the jury reasonably concluded that McClure had been performing the duties of a business manager.[7]

Much other admissible testimony also supported the jury's verdict. Former superintendent McBay testified that he had originally recommended McClure to the school board for the job of business manager, and that, although the board designated McClure only as office manager, she was in fact required to do the same work that she would have been required to do had the board hired her as "business manager". He also testified to the administrative regulations governing job classifications. Superintendent Sims testified that he could not work with McClure because of the controversy over her job classification. McClure herself testified, similarly to the documentary exhibits in the EEOC file, that she thought she had been hired to be the business manager, and that she addressed others and was addressed by them as business manager. One school board member testified that a man was needed for the job. Another board member testified that McClure was discharged because of her EEOC action.

In light of all of this admissible evidence, the newspaper articles, the letters authored by McClure, the hearsay testimony (*see* note 6 *supra*), and the administrative regulations are merely cumulative and (if indeed the jury had indeed looked at them) would not have contributed to its verdict. Although they should not have been admitted into evidence, they did not prevent the doing of substantial justice. Their erroneous admission was harmless error and does not warrant reversal.

## II. *Attorney's Fees*

On her cross-appeal, McClure contends that the attorney's fees awarded her upon her Title VII claim, 42 U.S.C. § 2000e–5(k), were inadequate and that, without adequate explanation, the district court reduced her itemized and substantiated statement of attorney's fees to an arbitrarily set lower amount. We find merit to this contention.

After the district court's favorable decision on McClure's Title VII claim, she moved for the allowance of her attorney's fees. To the motion was attached a 24-page itemized statement by her attorney, showing items of work performed, dates, and time spent, requesting a total of $35,993.76: 156.50 hours at $125 per hour, by her experienced chief of counsel ($19,562.50, total); 165.75 hours at $75 per hour by his associates ($12,431.25 total); 18 hours by a law clerk, at $25 per hour (total, $450); and reimbursement of $3,550.01 expenses. McClure also filed a 56-page memorandum of authority in support of the reasonableness of the fee requested, in the light of the customary factors, and indicating that the fee of $125 per hour was within the range of customary fee charges.

The defendant Mexia then filed an eight-page memorandum in opposition to the plaintiff's application for attorney's fees. A principal argument asserted was that the requested attorney's fees should be denied or reduced because the plaintiff did not prevail on a central issue or because some of the plaintiff's claims were rejected. With regard to the amount of time spent, the defendant suggested that the 340 billable hours resulted from a duplicity of time spent by the plaintiff's attorney and his five associates—noting that defendant's counsel, with only two associates, spent billable time of only 216 hours. With regard to the plaintiff's proof of the customary rate of $125 per hour for Houston

---

7. (McClure was listed in the personnel roster and the personal directory as business manager; the insurance bond covering her was issued to cover a business manager; she executed her oath of office by swearing to execute the duties of a business manager; she signed a nonarbi-trage bond certificate as business manager; a salary report to the school board designated McClure as business manager; and an outside certified public accountant referred to her as the business manager in a letter admitted into evidence without objection.)

attorneys such as the plaintiff's counsel, the defendant stated that the customary rate in Waco, where the case was tried, was only $75 per hour. (The total fee of the defendant's counsel, including compensation for his two associates and a law clerk, was $13,354.)

In *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), we enumerated twelve factors that should be considered in determining the proper amount to be awarded as attorney's fees.[8] The district court listed the twelve *Johnson* factors and concluded that an award of $13,000 in attorney's fees was reasonable and just.[9] The district court's reasons for reducing the award sought are, in full:

> The Court's specific findings vis-a-vis *Johnson* are as follows: Counsel for Plaintiff, in the Court's opinion, spent more time than necessary on a relatively simple case, making his requested award of $32,443.75 (including associates' and law clerks' time) excessive; Plaintiff's case and causes of action were not particularly complex, given the plethora of § 1983 and Title VII cases on record; counsel did represent Plaintiff skillfully and prevailed on all issues; the monetary award given by the jury was relatively moderate; the case was not "undesirable" or unpopular; and an award of $13,000.00 is comparable to fee awards made by this Court in similar cases.

The difficulty in reviewing the plaintiff's contention that the district court abused its discretion in reducing the requested attorney's fees is that, unless we abdicate our review function and accept the conclusory reasons offered, we are essentially unable to determine how the district court determined that an award of $13,000 was more appropriate than the some $35,000 sought.

In *Professional Association of College Educators v. El Paso Community College District*, 730 F.2d 258 (5th Cir.) *cert. denied*, —— U.S. ——, 105 S.Ct. 248, 83 L.Ed.2d 186 (1984), in response to a claim by the plaintiff for $83,000 attorney's fees and reimbursement of $15,000 expenses, the district court awarded only $5,000, in part on the explanation that "the plaintiffs' counsel had spent more time than the court believed necessary." *Id.*, 730 F.2d at 271. In vacating the award as vaguely explained, and in remanding for a proper consideration, we noted that the district court's finding were "inadequate under the controlling precedent of this circuit. They consist of little more than a mechanical recitation of the twelve factors listed in *Johnson*."

We continued:

> The court gave no indication of how many hours it believed were reasonably expended in representing [the plaintiff], nor any hint of what it believed to be a reasonable hourly fee for counsel's services. It gave no intimation why it denied reimbursement of expenses.

*Id.*, 730 F.2d at 271–72.

For similar reasons, we vacate the award of the attorney's fees in the present case, and remand for reconsideration and proper findings.

With regard to the procedure followed in the present case, we note with approval that the defendant made specific objections to the plaintiff's itemized request for attorney's fees. In general they were: that the plaintiff was not the prevailing party on the central issue or on all the issues; that the hours expended were too great; and

---

**8.** As there enumerated, the twelve factors are: the time and labor required; the novelty and difficulty of the questions; the extent to which the attorney's acceptance of the case precluded other employment opportunities; the customary fee for similar legal work in the community; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the amount involved and the results obtained; the experience, reputation, and ability of the attorney; the undesirability of the case; the nature and length of the attorney's professional relationship with the client; and fee awards in similar cases.

**9.** The amount of $13,000 included reimbursement for the expenses of $3,550.01 sought. The district court's reasons for judgment did not explain why such reimbursement was denied. The plaintiff's brief informs us, that after subtraction of the *non*-taxable expenses for which no reimbursement was granted, the net attorney's fee awarded was $11,393.89.

that the hourly rate sought of $125 was excessive.

Although the district court held that the plaintiff was the prevailing party on all issues, in reducing the award it essentially held only that the plaintiff's counsel had "spent more time than necessary on a relatively simple case." We assume that by that ruling the district court rejected the defendant's contention that the hourly rates ($125 for lead counsel; $75 per hour for associates; and $25 per hour for law clerk) sought by the plaintiff were excessive, but that nevertheless that the number of hours spent was excessive.

The plaintiff has claimed: 156.50 hours for chief counsel; 165.75 hours for associate counsel; and 18 hours by a law clerk. In objecting to the number of hours as unnecessary, the defendant relied solely upon the circumstance that only the following billable hours were spent by its counsel: 128 hours for its chief counsel; 70.5 hours by its associate counsel; and 18.2 hours by law clerks.

We are unable to determine from the district court's reasons if indeed it accepted the defendant's contention that the plaintiff was required to spend no more time in lawyering than the defense, or (for purposes of review) the reasons and rationale for its so doing. Indeed, even had the district court accepted that contention, at the hourly rates sought by the plaintiff (and inferentially approved by the district court), our arithmetic shows that the plaintiff would have been entitled to an award of $21,742 for time of chief counsel, associates, and law clerk, plus reimbursement of $3,550.00, or a total of $25,292.

We can thus ascertain no explainable reason why the district court awarded only $13,000, including reimbursement expenses, of the amount sought. To avoid similar necessities for remand in the future, we encourage the following record procedure: The plaintiff should (as here) submitted itemized hours and expenses, and authority in support of the hourly rates or other incidents of allowance sought, as well as justificatory reason under the *Johnson* factors for allowance of the amount sought. The defendant should, as it did here, present specific objections to the allowance sought and advance the reasons for a denial or reduction. Review of an allowance, reduction, or denial of attorneys' fees will be facilitated, if the district court then makes specific rulings on the objections and states the specific reasons that justify the amount allowed.

*Conclusion*

Accordingly, we affirm the judgment(s) appealed from, but we vacate the award of attorney's fees and remand for reconsideration and proper findings on that issue. Costs assessed against the defendant-appellant.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.