IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-10651
_____


ANNE MARIE LINDSEY, ET AL

                                    Plaintiffs

LINDA ANN YORK

                                    Plaintiff-Appellant

v.

PRIVE CORPORATION, doing business as Cabaret Royale; WALHILL
PARTNERS LTD; CRC OPERATING CORPORATION, also known as Dallas
Food  & Beverage; DNL CORPORATION

                                    Defendants-Appellees

*****************************************************************

LINDA ANN YORK

                                    Plaintiff-Appellant,

v.

PRIVE CORPORATION, doing business as Cabaret Royale

                                    Defendant-Appellee

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

November 24, 1998


Before KING, GARWOOD, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

    Linda York appeals from a judgment entered on a jury verdict
against her.  Her principal claim is that the trial should not have
been  allowed  to  proceed,  because  the  defendant's  legal

representative in bankruptcy had previously agreed to a settlement. In the alternative, she argues that the district court made various evidentiary and procedural errors that warrant reversal. We affirm.

I

York and Anne Marie Lindsey brought Age Discrimination in Employment Act claims against Prive Corp., operator of an upscale gentleman's club, which allegedly refused the women promotions and constructively discharged them on the basis of their age. The district court granted summary judgment. We vacated and remanded. See Lindsey v. Prive Corp., 987 F.2d 324 (5th Cir. 1993). Prive Corp. then filed for protection under Chapter 7 of the Bankruptcy Code. Before the bankruptcy filing it transferred its assets to defendant-appellee Walhill Partners, Ltd., which in turn transferred to defendant-appellees CRC (Dallas Food and Beverage) Operating Corp. and DNL Corp. The transfers are allegedly without consideration.

Prive Corp.'s trustee in bankruptcy, Daniel Sherman, agreed to entry of judgment in the amount of $3.3 million against Prive. Plaintiffs maintain that the trustee arrived at this amount after consulting with a labor law firm, reviewing the proof of claim, and considering two mock jury verdicts that favored the plaintiffs. Sherman, however, confessed little knowledge of age discrimination law. Asked whether he "really just accepted the claims plaintiffs here have filed to be allowed, and based on whatever damages they

2

claim to be able to support," Sherman replied, "That's pretty close to being accurate, yes." Sherman explained that Prive Corp. had no assets, but that if it consented to a judgment, the plaintiffs might be able to pursue the other corporations on a theory of successor liability. Should the plaintiffs win, Sherman maintained that Prive Corp. would receive at least 25% of the damages under the terms of the agreed judgment, and that this was the best way of getting money into the estate for the benefit of other creditors, including the United States. As we will explain, in effect, the agreement effectively gave Lindsey and York 75% contingency fees on any recovery, and that from assets the trustee chose not to pursue for the benefit of the estate.

Bankruptcy Judge Harold C. Abramson approved the agreed upon judgment, finding the litigation to be a "core matter" and determining that the decision to settle "falls within the necessary range of reasonableness considering the expense and delay encountered in litigation of this type." In re Prive Corp., No. 394-32837-HCA-7 (Bankr. N.D. Tex. Feb. 21, 1996). He verbally added, however, "[T]his Court will not take a position with regard to any effect of the claim in this case as to other Courts."

Despite the agreed upon judgment, which is now final, the district court required the plaintiffs to try their claims before a jury, with the alleged successors in interest rather than the trustee in bankruptcy defending the claims. Judge Solis explained that he did not believe that the trustee in bankruptcy was the real

3

party in interest in defense of the age discrimination claims. The district court ordered a bifurcated trial, the first part dealing with questions of liability, and the second dealing with successorship issues, contingent on a liability finding in the first trial.

The jury found against York on both of her claims. The jury rejected Lindsey's constructive discharge claim after first deadlocking 5-1 on her wrongful-denial-of-promotion claim, five jurors apparently voting for her. During deliberations, the holdout juror requested to be excused. Plaintiffs declined to consent to a nonunanimous verdict. The parties agreed to allow the court to question the juror outside the presence of counsel. The juror explained that his desire to be excused was "just a matter of conscience in regard to this case." When counsel returned, the judge told them that the juror had no personal reason to be excused. Counsel accepted this general statement and did not ask the judge for more detail.

The court granted partial final judgment. The defendants received a judgment on both of York's claims. Because Lindsey's two claims were intertwined, the court did not enter judgment on either of them. Only York appeals.

II

4

Our first question is whether the bankruptcy court's judgment was entitled to issue preclusive effect against the successors in interest.[1]  We hold that it was not.

A trustee in bankruptcy has the authority to settle claims filed against the estate.  See, e.g., Marks v. Brucker, 434 F.2d 897, 900-01 (9th Cir. 1970).  Judgments of bankruptcy courts enjoy the issue preclusive effects of a final judgment by a court of competent jurisdiction.  See Katchen v. Landy, 382 U.S. 323, 334 (1966); see also Burkett v. Shell Oil, 487 F.2d 1308, 1315 (5th Cir. 1997).

These general principles do not decide this case, however, for the judgment was the product not of adversaries, but of joint venturers.  The plain purpose was to agree to an extraordinarily high judgment against Prive and impose the liability upon asserted successors in interest -- with no opportunity for the true defendants to defend the merit of the judgment.  The basis of this successor liability was said to be a series of fraudulent transfers of Prive's assets to them.  The trustee could have pursued the return of the assets for the benefit of all creditors.  If successful, the assets would have been returned.  The trustee's interest would then have been to defend York's claim against Prive. The trustee explains that pursuing the assets would have been expensive and this was a no asset case.  The trustee's solution was

_____

[1]We need not reach the question of whether the settlement is binding against Prive Corp. itself.

5

in essence to allow another party to pursue the claim and take 75% of the assets.  We need not unfold the full tale to expose the agreed judgment for what it was.

"Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." Montana v. United States, 440 U.S. 147, 164 n.11 (1979); see also Kremer v. Chemical Const. Corp., 456 U.S. 461, 480-81 (1982) (requiring a full and fair opportunity to litigate a claim as a prerequisite to application of preclusion doctrines); Universal Am. Barge Corp. v. J-Chem, Inc., 946 F.2d 1131, 1139 (5th Cir. 1991) (discussing the requirement in an indemnity case).[2]

The defendant-appellees were not given a full and fair chance to defend the age discrimination claim.  Indeed, they were given no chance.  Thus, the successors in interest remained free to try the liability issue in a subsequent proceeding.  See 18 James Wm. Moore, Moore's Federal Practice 3d, § 132.03[2][I] ("Issues that

---

[2]We have also noted on occasion that issue preclusion applies only where there is "no special circumstance that would render preclusion inappropriate or unfair." E.g., United States v. Shanbaum, 10 F.3d 305, 311 (5th Cir. 1994). But see 18 Charles A. Wright et al., Federal Practice and Procedure § 4426, at 264-65 (1981) (arguing that "[s]uch general statements should be approached with great caution").  This requirement originated from concerns about offensive collateral estoppel, see Recoveredge L.P. v. Pentecost, 44 F.3d 1284, 1291 n.12 (5th Cir. 1995), which is at issue here.  Nonetheless, because we find that there was not a full and fair opportunity to litigate the liability issue determined by the bankruptcy court, we need not label the peculiar facts here a "special circumstance."

were only addressed in the trial court's adoption of a consent agreement, and were not contested or litigated, may be litigated in a subsequent action.").

This conclusion is consistent with the general principle that "parties who choose to resolve litigation through settlement may not dispose of the claims of a third party, and a fortiori may not impose duties or obligations on a third party, without that party's agreement." Local No. 93, Intern. Ass'n of Firemen v. City of Cleveland, 478 U.S. 501, 529 (1986); see also id. ("A court's approval of a consent decree between some of the parties therefore cannot dispose of the valid claims of nonconsenting intervenors; if properly raised, these claims remain and may be litigated by the intervenor. . . . [A] court may not enter a consent decree that imposes obligations on a party that did not consent to the decree."); cf. In re Del Grosso, 106 B.R. 165, 168 (Bankr. N.D. Ill. 1989) (noting, in another bankruptcy context, that proponents of settlement and the bankruptcy trustee must show that the settlement agreement was not collusive).[3]

---

[3]York challenges the relevance of this principle, noting that the Seventh Circuit has found that "[t]here is an exception to the general rule that parties to a consent decree may not impose obligations on an unwilling third party," and particularly that "federal courts may require an innocent third party to participate in remedies for illegal discrimination." United States v. City of Chicago, 978 F.2d 325, 332 (7th Cir. 1992) (citing Zipes v. Trans World Airlines, 455 U.S. 385, 400 (1982); International Bhd. of Teamsters v. United States, 431 U.S. 324, 372-75 (1977)).

York, however, fails to note the Seventh Circuit's explanation of this exception: "This exception permits third-party entitlements to be altered if a court finds that alteration necessary to an

Two additional points of error claimed by the defendant hinge directly on our resolution of the validity of the settlement. York maintains that the district court erred by allowing the successors in interest to assume Prive Corp.'s defense at trial and prohibiting the trustee in bankruptcy from appearing or testifying at trial. The defendants on the plaintiffs' successorship claims, however, are necessarily the alleged successors of Prive Corp. The district court was not trying again Prive Corp.'s liability, but rather litigating the alleged successors' successorship liability. Because the collusive settlement has no preclusive effect, this liability depended not only on a finding that they were successors, but also on a finding that illegal discrimination occurred. Thus, the trial was not of Prive Corp.'s liability, but that of the successors, and Prive Corp. had no direct interest in the outcome.[4]

---

appropriate remedy for a legal wrong." Id. (internal quotation marks omitted). In the case of a collusive consent decree, there is no need to search for an "appropriate remedy," because there has been no legitimate finding of a "legal wrong."

Moreover, the genesis of the Seventh Circuit's exception is language in Zipes emphasizing that the legislative history of Title VII gives "emphatic confirmation that federal courts are empowered to fashion such relief as the particular circumstances of a case may require to effect restitution, making whole in so far as possible the victims of ... discrimination." Zipes, 455 U.S. at 399. If anything, the need to accommodate relief to "particular circumstances" weighs against kneejerk imposition of relief here.

[4]Even if Prive Corp. were viewed as the defendant, the trial judge's decision to allow representation by the successors in interest is consistent with the stipulation of Federal Rule of Civil Procedure 24(a) allowing intervention when "the applicant is so situated that the disposition of the action may as a practical

IV

The district court acted well within his discretion in bifurcating the trial into one proceeding to determine liability and another to determine successorship issues. Bifurcation is appropriate where convenient, economical, or necessary to avoid prejudice. See Fed. R. Civ. P. 42(b) ("The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue . . . ."). Essentially, plaintiffs argue that this decision prevented them from countering appellees' characterization of Prive's business as legitimate and its owners as innocent. These issues, however, are irrelevant to the age discrimination claim. York argues that the delay caused by bifurcation was highly prejudicial, making collection of her claim more difficult. Any such prejudice could not have had any effect given the jury verdict resulting in an adverse judgment.

Relatedly, the district court did not abuse its discretion in excluding evidence of bankruptcy or fraud by the employer in the

---

matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." It is not clear whether the defendant-appellees filed a motion for intervention pursuant to Rule 24(c), but the trial judge's decision was within his discretion. See, e.g., Smith v. Pacific Mo. R.R. Co., 615 F.2d 683, 684-85 (5th Cir. 1980) (finding that regardless of whether a request was considered a Rule 60(b) motion or a Rule 24(a) motion, its resolution was within the sound discretion of the trial judge).

9

liability proceeding. Because such evidence is irrelevant to liability on the age discrimination claim, excluding these issues at trial was proper. See, e.g., United States v. Masat, 948 F.2d 923, 933 (5th Cir. 1991) (noting the district court's broad discretion in assessing the relevance and materiality of evidence). York complains that the defense was able to admit promotional videotapes to demonstrate its upstanding business practices. The videotapes were admitted to show the appearance and atmosphere of Cabaret Royale. This evidence was plainly relevant, and we find no prejudice.

V

York protests the district court's refusal to enter a default judgment against defendant Walhill. The court had warned that a default judgment would be entered if Walhill did not obtain counsel. Walhill continued unrepresented, allegedly because of a lawyer's mistaken conclusion that Walhill no longer existed as an entity. Arguing that we should reverse the district court's failure to enter a default judgment against Walhill, York cites Link v. Wabash R. Co., 370 U.S. 626 (1962), and National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639 (1976). York emphasizes her compliance with Federal Rule of Civil Procedure 55(b) in providing appropriate notice to the opposing party.

Entry of default, however, was not required. Indeed, both Link and Metropolitan Hockey affirm challenges to dismissals, and York cites no case in which a reviewing court reversed a failure to

10

enter a default judgment. The clerk may enter a default judgment only where the defendant initially fails to appear, which was not the case here. See Fed. R. Civ. P. 55(b)(1). Thus, the relevant provision is Rule 55(b)(2), but this rule does not include any mandatory language. Indeed, Rule 55(c) reads: "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." This reveals that a district court has the discretion to decline to enter a default judgment.

As appellees note, default judgments are disfavored. See 10 Moore, supra, § 55.20[2][b] (noting "a strong policy in favor of decisions on the merits and against resolution of cases through default judgments"); 10 Charles A. Wright et al., Federal Practice & Procedure § 2681, at 402 (2d ed. 1983); see also Sun Bank v. Pelican Homestead & Sav. Ass'n, 874 F.2d 274, 276 (5th Cir. 1989) ("The Federal Rules of Civil Procedure are designed for the just, speedy, and inexpensive disposition of cases on their merits, not for the termination of litigation by procedural maneuver. Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations.") (footnotes omitted). Relevant factors include whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would

11

think itself obliged to set aside the default on the defendant's motion. See 10 Wright et al., supra, § 2685. These factors offer little support to York, and the factors concerning prejudice, good faith mistake, and harshness weigh in favor of appellee. The district judge therefore did not comment on abuse of discretion.

VI

Alleged discovery abuses by appellees also did not mandate a continuance or a dismissal. A magistrate judge did observe that the behavior of appellees' counsel C. Gregory Shamoun at a deposition was the worst he had ever seen and recommended sanctions. The law, however, does not require continuances or dismissals for discovery abuses. In support of her request for a continuance, York cites only Sierra Club v. Cedar Point Oil Co., 73 F.3d 546 (5th Cir. 1996). This case, however, held only that "Rule 37 of the Federal Rules of Civil Procedure, which governs the imposition of sanctions for failure to make disclosures, does not require that a party file a motion to compel before moving for sanctions." Id. at 572. Rule 37 does not appear to require the granting of a continuance, and Cedar Point merely affirmed the district court's imposition of sanctions; it did not mandate any such sanctions for discovery abuse.

York claims prejudice resulted because counsel was required to spend two weeks prior to trial conducting discovery that would have occurred much earlier but for the defendants' discovery abuses. The discovery, however, pertained to successor liability issues.

12

York neither makes clear why such discovery needed to take place prior to the liability portion of the trial, nor why extensive trial preparation for the liability portion was needed given the years of litigation preceding the trial date. Moreover, the magistrate judge also noted that York exhibited an "obvious lack of diligence" in pursuing discovery; York can hardly now complain that her counsel did not have adequate time to prepare.

## VII

We also affirm five evidentiary rulings by the trial court.

First, York objects to the exclusion of testimony and a written statement by Frank Casperson, a former manager at the Cabaret Royale, concerning hiring practices. Casperson, according to York, would have testified that the defendants routinely hired and promoted younger women who were far less attractive than plaintiff Lindsey to dancer positions, and his letter indicated much the same thing. York urges that this court already decided that Casperson's testimony was admissible in its earlier appeal. This is an exaggeration. We mentioned Casperson's affidavit in finding that there were sufficient questions of fact to warrant a trial. See Lindsey, 987 F.2d at 328 & n.18. We did not decide that the statement will be admissible, the context of trial notwithstanding. In any event, the district court expressly allowed York to elicit testimony about the facts stated in the letter. Moreover, while the letter might be relevant to Lindsey's case, it was tangentially, not materially, related to York's.

13

Second, to support her claim that Cabaret Royale had a "climate of age bias," York wished to call Tamara Davis, a dancer, to testify that Joe Najjar, onetime food and beverage manager for Prive, told her that she was too old to work there, and to testify that Brian Paul, who allegedly made the decision not to allow Lindsey to dance, abused alcohol and drugs; and Art Householder, to testify that a management official of Prive had told him directly that Lindsey was not allowed to dance because of her age. This evidence was not directly relevant to claims of age discrimination by York. But the assertion is that the trial court should have allowed the evidence to show an ongoing pattern and practice of age discriminatory treatment of older workers, "a climate of age bias". See Estes v. Dick Smith Ford, Inc., 856 F.2d 1097, 1102 (8th Cir. 1988). We agree that the excluded evidence had relevance. We are, however, persuaded that the evidence was cumulative. See, e.g., United States v. Kalmutz, 309 F.2d 437, 440 (5th Cir. 1962) ("'The propriety of admitting evidence which is merely cumulative is a matter for the determination of the court in the exercise of sound discretion. Error is not predicable on its admission or its exclusion unless an abuse of discretion is established.'") (quoting 4 Jones on Evidence § 981 (5th ed.)). The district court did not abuse its discretion in excluding this evidence.

Third, York alleges that the district court erred in admitting a non-final determination by the EEOC of the plaintiffs' claims. "[U]nder precedents of this circuit, EEOC determinations and

14

findings of fact, although not binding on the trier of fact, are admissible as evidence in civil proceedings as probative of a claim of employment discrimination at issue in the civil proceedings." McClure v. Mexia Ind. Sch. Dist., 750 F.2d 396, 400 (5th Cir. 1985). While York presses that McClure provides only that final EEOC determinations are admissible, McClure does not distinguish between intermediate and final EEOC determinations. Nor does Johnson v. Yellow Freight Sys., Inc., 734 F.2d 1304 (1984), upon which York also relies. Moreover, intermediate EEOC determinations are not inherently less trustworthy than final ones. See Fed. R. Evid. 803(8)(C) (rendering EEOC evidence inadmissible upon showing that "the sources of information or other circumstances indicate the lack of trustworthiness"). "[T]he defendant is free to present evidence refuting the findings of the EEOC or point out deficiencies in the same, with regard to the weight, if any, to be given by the trier of fact to the EEOC determination." McClure, 750 F.2d at 400; see also Smith v. Universal Servs., Inc., 454 F.2d 154, 157 (5th Cir. 1972) ("[T]he report is in no sense binding on the district court and is to be given no more weight than any other testimony given at trial.").[5]

---

[5]York also claims that the EEOC report was prejudicial because it was based on a bona fide occupational qualification defense that defendants waived before trial. This argument, however, was raised for the first time in York's reply brief, and it is therefore waived. See Najarro v. First Federal Sav. & Loan Ass'n, 918 F.2d 513, 515 (5th Cir. 1990).

15

Fourth, York argues that the district court should have admitted the official response Prive submitted to the EEOC during its investigation of the plaintiffs' charges. The response essentially would show that Prive had changed its position over the course of litigation. York points to Olitsky v. Spencer Gifts, Inc. (Olitsky II), 964 F.2d 1471, 1476-77 (5th Cir. 1993), for the proposition that such response letters are always admissible. Olitsky in fact held only that the district court did not abuse its discretion in admitting such evidence. See id. at 1477. The Olitsky court specifically held inadmissible "'proposals and counter-proposals of compromise made by the parties during the [EEOC's] efforts to conciliate,'" id. at 1477 (quoting Branch v. Phillips Petroleum Co., 638 F.2d 873, 881 (5th Cir. Unit A Mar. 1981)). Regardless of whether appellees' response letter constituted such a proposal or counter-proposal, it does not constitute "purely factual material relating to the merits of [the] charge," id., which the trial judge could admit.

Fifth, York urges that the district court erred in allowing hearsay testimony from management witnesses of what other managers told the plaintiffs. York notes, as an example, that the trial court allowed the defendants to solicit testimony from Don Dotson, a Cabaret Royale manager, regarding the reasons he terminated York, even though he was only repeating what another manager told him. Dotson, however, did not quote another manager, but merely stated what his understanding of York's conduct was. The testimony was

16

thus not offered for the truth of the matter of what York had done, but to explain the manager's motive and state of mind when he terminated her.  In any event, the testimony of Dotson and others was collateral, and any error made would have been harmless.

## VIII

York also urges that the district court committed error in sua sponte requesting that she provide evidence that her claims were within the scope of her EEOC charge, even though the defendants had admitted that the court had jurisdiction. We disagree.  The entire examination was conducted outside the presence of the jury, and the court ultimately concluded that it did have jurisdiction.  We find no error and certainly no prejudice.

## IX

We also find that there was no error in the jury charge. First, York urges that the district court should not have required her to prove that age was a "determining" factor in the decision to fire her.  The Supreme Court, however, has stated in an ADEA case, "Whatever the employer's decisionmaking process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome." Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993); see also Woodhouse v. Magnolia Hosp., 92 F.3d 248, 253 (5th Cir. 1996) ("Although age need not be

17

the sole reason for the adverse employment decision, it must actually play a role in the employer's decisionmaking process and have a determinative influence on the outcome."); LaPierre v. Benson Nissan, Inc., 86 F.3d 444, 449 (5th Cir. 1996); Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 994 (5th Cir. 1996). York argues that Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1216-17 (5th Cir. 1995), which reaches a similar conclusion in the Title VII context, was an incorrect interpretation of Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). Regardless of whether this is correct, and we do not suggest otherwise, the Fifth Circuit's consistent holdings in this area are binding on the panel.

Second, York claims error in the district court's use of the word "negligence" in describing the plaintiffs' burden on the willful violation instruction. The jury, however, never reached this instruction, and thus any error could not have been prejudicial.

X

York also objects to the trial court's failure to inform her counsel of the statement of Anderson, the holdout juror on one of Lindsey's claims, that his desire to be excused was "just a matter of conscience." All counsel agreed that the judge would alone interview the juror. The judge faithfully reported the essence of his conversation -- that the juror "doesn't have any reason why he needs to be excused, it just pertains to service on the jury." When the judge asked, "Well, do you have any suggestions from

18

here," counsel returned the discussion to whether counsel would accept less than a unanimous verdict.  The response of the juror was ambiguous.  We cannot fault the completeness of the report of the district judge.  Any shortcoming was waived by counsel who would have had the court reporter read the notes of the conference or ask the judge if anything else was said that might bear on their decision whether to proceed with fewer that six persons.

XI

For the above reasons, we affirm the judgment of the district court with respect to York's claims.

AFFIRMED.

19