**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 91-1010

JOHN D. OLITSKY,

Plaintiff-Appellee, Cross-Appellant,

versus

SPENCER GIFTS, INC.,

Defendant-Appellant, Cross-Appellee.

Appeals from the United States District Court
For the Northern District of Texas

(          June 22, 1992          )

Before BROWN, KING and WIENER, Circuit Judges.

WIENER, Circuit Judge:

Spencer Gifts, Inc. (Spencer) appeals a judgment against it for firing John D. Olitsky in violation of the Age Discrimination in Employment Act (ADEA)[1] and the Employee Retirement Income Security Act (ERISA).[2] Olitsky cross-appeals, arguing that the district court erroneously refused to double the jury's award of front pay as liquidated damages under the ADEA. Finding no merit to the arguments of either party, we affirm.

I.

---

[1] 29 U.S.C. §§ 621-634.

[2] 29 U.S.C. §§ 1001-1461.

FACTS

In December 1983, Spencer fired Olitsky from his position as merchandise manager. Olitsky was 53 years old. Spencer originally hired Olitsky in 1973, when he was 42 years old, as a buyer for its retail store division. Olitsky resigned from Spencer in 1979 to take a position with another company. In 1981, Spencer again hired Olitsky, who was then 50 years old, as a merchandise manager. Spencer performed well in that position in 1981 and 1982 and received favorable evaluations.

In October 1983, Hank Roth, a general merchandise manager for Spencer, informed Olitsky that his performance had deteriorated and that the buyers whom he supervised were not performing adequately. When Roth dismissed Olitsky in December 1983, he explained to Olitsky that he had not satisfactorily improved his performance, that Spencer was in the process of reorganizing its merchandise department, and that as a result of the reorganization, there would be no room for Olitsky. When he was fired, Olitsky was only a few months from meeting the ten-year vesting period of his benefits under Spencer's pension plan.

Olitsky filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging that Spencer fired him because of his age. After the EEOC conducted an investigation, but before it made a determination of Olitsky's charge on the merits, Olitsky brought suit in federal district court, alleging violations of the ADEA and ERISA. After a jury trial, the district court entered judgment in favor of Olitsky on both claims. In Olitsky

I,[3] we reversed and remanded, holding that the district court had erroneously admitted into evidence the EEOC's file on Olitsky's charge.

On remand, the jury returned a verdict for Olitsky, finding that Spencer willfully discriminated against Olitsky on the basis of age, and awarding him backpay of $500,000 and lost pension benefits of $100,000. The district court accepted the jury's finding of willfulness, doubled the jury's backpay and lost pension benefits awards as liquidated damages, awarded $400,000 as front pay and $123,000 as lost pension damages under Olitsky's ERISA claim.[4] Spencer appeals.

## II.

### ANALYSIS

Spencer challenges several aspects of the district court proceedings in this appeal. It argues that the district court erroneously (1) admitted certain documents and testimony into evidence, (2) refused to give jury instructions on disputed prima facie elements of Olitsky's ADEA claim, and (3) determined that Spencer violated ERISA when it fired Olitsky. Olitsky argues on cross-appeal that the district court erred in failing to double

---

[3]Olitsky v. Spencer Gifts, Inc., 842 F.2d 123 (5th Cir.), cert. denied, 488 U.S. 925, 109 S. Ct. 307, 102 L. Ed. 2d 326 (1988).

[4]The district court stated that in light of its $123,000 award as lost pension benefits under ERISA and the jury's award of $100,000 as lost pension benefits under the ADEA, Olitsky would be entitled to recover only $123,000 for lost pension benefits (in addition to $100,000 as liquidated damages for willfulness) so as to prevent a double recovery.

3

his front pay award after the jury found that Spencer acted willfully in violating the ADEA.

A.  Admission of evidence.

The admission of evidence is within the sound discretion of the district court.  We will reverse a district court's evidentiary rulings only upon a finding of abuse.[5]

1.  Result of the prior trial.

During Olitsky's direct examination at trial, he testified as follows:

> Q.    What kinds of problems have you encountered that have kept you from getting high level employment since being terminated at Spencer Gifts and since the first trial of this case?
>
> *          *          *
>
> A.    [S]ince the first trial it's more difficult because the entire gift industry is aware I won that case for a large amount of money.

Spencer immediately moved for a mistrial, arguing that Olitsky's statement about the result of the first trial was extremely prejudicial to Spencer and that the prejudice could not be cured by a jury instruction.

The district court conducted a bench conference and noted that Spencer had allowed Olitsky to refer to the prior trial in his opening statement without objection, and that Spencer did not raise the issue in its motion in limine, even though that motion did address several issues that the district court considered "a lot less harmful than [reference to the prior trial]."  There was

---

[5]Jon-T Chems., Inc. v. Freeport Chem. Co., 704 F.2d 1412, 1417 (5th Cir. 1983).

4

also a discussion about whether Spencer was contending that Olitsky did not mitigate his damages by diligently searching for employment and whether Olitsky offered the testimony about the first trial to rebut that contention.  The district court stated that it had asked Spencer earlier in the trial whether it was making such a contention, but that Spencer "danced around that question" and did not specifically deny that it was.

The district court concluded the bench conference by denying Spencer's motion for mistrial, stating again that it did not understand why Spencer did not raise the issue in its motion <u>in limine</u>.  The district court recalled the jury and gave the following instruction:

> [Y]ou have heard testimony about a previous trial of this case.  The fact that this is the second trial is irrelevant to your consideration of this case.  You should not consider the fact of a previous trial or its outcome in any way.  Your verdict in this case must be based solely upon the facts as you find them from the evidence introduced at this trial with the law as I shall give to you during the trial or at the end of the case.

The district court further instructed the jury before it retired to deliberate:

> You have heard that there was a previous trial of this case. Except for testimony from that trial which has been admitted as evidence in this trial, you should disregard everything about that earlier trial in reaching your verdict in this case.  Common sense will tell you that the adjudication from the earlier trial must have been flawed; otherwise, we would not have spent all of the time and effort required by this trial to determine the rights and liabilities of the parties.  If you should allow the fact of the previous trial or its outcome to influence you, that would be improper, and all of the time and effort spent on this trial will have been wasted.

> In arguing that the evidence of the result of the first

5

trial was so prejudicial that the curative instruction was not adequate to eliminate the harm, Spencer relies on United States v. Williams.[6] In that case, a criminal defendant and his three co-defendants were convicted in a jury trial, but the district court granted their motion for new trial. On the third day of the second trial, the government informed the district court that a local television news broadcast on the previous night had included a report about the trial. The report stated that the four defendants had previously been convicted, but that a new trial had been granted. The district court polled the jury, and two jurors admitted that they had seen the report. Both jurors stated that the report would not influence their decision in the case. The defendant moved for a mistrial, but the district court denied that motion. The district court instructed the jury to disregard everything not heard in court. The court proceeded with the trial, and the defendants were again convicted.

On appeal, we held that because the news report's mention of the result of the first trial was probative of guilt and highly prejudicial, the exposure of the two jurors to that information resulted in an unfair second trial.[7] We concluded that the prejudice was not corrected by the district court's instruction, and we reversed and remanded for a new trial.[8]

---

[6]568 F.2d 464 (5th Cir. 1978).

[7]Id. at 470-71.

[8]Id. at 471.

6

Spencer also relies on <u>Coleman Motor Co. v. Chrysler Corp.</u>.[9] In that Third Circuit case, the plaintiff (Coleman) called as a witness Sam Liberto, who was the plaintiff in a previous suit against the same defendant (Chrysler), in which the allegations were identical to those in <u>Coleman</u>. In the previous suit, the jury had found that Chrysler conspired to monopolize trade, but that Liberto had sustained no damages, so judgment was entered for Chrysler. In <u>Coleman</u>, Chrysler cross-examined Liberto about his suit against Chrysler and brought out the fact that Liberto had recovered no money from that suit. On redirect, Coleman asked Liberto whether the jury in his suit had found that Chrysler had conspired to monopolize trade, and he answered in the affirmative. Chrysler objected, but the district court allowed the testimony. The district court instructed the jury that they could consider the verdict in the previous trial in assessing the credibility of Liberto and in determining whether Chrysler had notice and intent. The Third Circuit held that Chrysler's reference to the previous verdict was a permissible attempt to show Liberto's bias, but that Coleman on redirect did not limit its questions about the previous verdict to an effort to rebut the implication of bias.[10] Thus, held the court of appeals, Coleman's references to the prior verdict were prejudicial and warranted a new trial because "[t]he admission of a prior verdict creates the possibility that the jury will defer

---

[9]525 F.2d 1338 (3d Cir. 1975).

[10]<u>Id</u>. at 1350-51.

7

to the earlier result and thus will, effectively, decide a case on evidence not before it."[11]

In the instant case, the disclosure of the result of the first trial did not prejudice Spencer to the extent Spencer would have us believe.  Spencer was at least partly to blame for the disclosure, as the district court recognized.  Spencer "danced around" the district court's question whether it was contending that Olitsky failed to mitigate his damages, and Spencer failed to raise the issue, which it now argues was incurably prejudicial, in its motion in limine.

In addition, the curative instruction given by the district court negated any prejudice that may have occurred and distinguishes the instant case from Williams and Coleman.  In Williams, the trial court gave only "the usual instruction to disregard everything not heard in court.  No specific instruction was given the two jurors to disregard the news report of the prior trial, nor were they instructed that the prior instructions were not evidence of guilt."[12]  Additionally, such evidentiary rulings in criminal trials, with their constitutional overtones, are at best weakly analogous in civil cases.

In Coleman, the trial court instructed the jury that it could consider the result of the prior trial as evidence for a limited purpose.  In the instant case, however, the district court clearly instructed the jury, on two occasions, that the

---

[11]Id. at 1351.

[12]Williams, 568 F.2d at 466.

first trial was irrelevant and that the jury was not to consider the occurrence or result of the first trial for any purpose.  We conclude that those instructions were sufficient to cure any harm that may have resulted from the mention of the first trial and its results.

2.  Spencer's position letter to the EEOC.

In Olitsky I, the district court admitted into evidence the entire file on this dispute prepared by Janice Johnson, an investigator for the EEOC.  That file included Johnson's handwritten notes that reported Ronald Mangel, general counsel for Spencer, as saying he "can't rebut if McNally was promoted." McNally was a younger employee whom Spencer promoted when Olitsky was fired.  Olitsky used Mangel's statement to argue to the jury that Spencer had admitted that it could not rebut the allegation of age discrimination.  We stated that Mangel's supposed admission of liability was "the kind of exchange among the parties and the EEOC that informal conciliation ought to encourage" and that allowing the use of such admissions in later litigation "would attach a penalty to the candor and forthrightness that Congress obviously believed were necessary to the successful conciliation of disputes."[13]  We held that the admission of the entire EEOC file constituted reversible error.[14]

Johnson gave Spencer notice of Olitsky's claim by letter dated March 22, 1984.  Mangel responded with a position letter

_____

[13]Olitsky I, 842 F.2d at 127.

[14]Id.

dated April 11, 1984 to Johnson (the "Mangel letter"). That letter denied that Spencer had discriminated against Olitsky and stated that Olitsky was fired because his sales were inadequate. The Mangel letter also stated, in part, that "Ms. Jeri Hurvitz replaced Mr. Olitsky as Merchandising Manager. . . . Her birthdate is October 5, 1956." Spencer referenced the Mangel letter and attached a copy of it to its answers to Olitsky's interrogatories during pretrial discovery.

At the second trial on remand, Olitsky introduced Spencer's discovery responses, including the Mangel letter. Olitsky also introduced a summary chart that included references to and excerpts from the Mangel letter. The district court admitted those exhibits over Spencer's objection.

Spencer argues that the admission of the Mangel letter, which was part of Johnson's EEOC file that we held inadmissible as a whole in Olitsky I, violates both section 706(b) of Title VII of the Civil Rights Act of 1964[15] and the holding of Olitsky I.

Section 706(b) provides in part:

If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. Nothing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned (emphasis added).

In Olitsky I we stated that the admission of the entire EEOC file

---

[15]42 U.S.C. § 2000e-5(b).

violated section 706(b), but we did not decide whether section 706(b) applied to an ADEA case.[16]  Neither do we decide that question here, as we hold that the Mangel letter did not constitute conciliation evidence to which section 706(b) would apply.

The Mangel letter set forth purely factual information and related Spencer's position on the merits of Olitsky's claim.  The letter contained no reference to conciliation efforts between Spencer and the EEOC.  Spencer neither made any offers of settlement nor responded to any such offers by the EEOC in the Mangel letter.  In Branch v. Phillips Petroleum Co.,[17] we distinguished between "purely factual material related to the merits of [the] charge" and "proposals and counter-proposals of compromise made by the parties during the [EEOC's] efforts to conciliate" and held that under section 706(b), disclosure of the former was allowable, but disclosure of the latter was not.[18]  We adhere to that distinction and hold that the Mangel letter does not constitute conciliation material that section 706(b), were it to apply, would render inadmissible.

Spencer argues that under the law of the case doctrine, our holding in Olitsky I prohibited the district court from admitting the Mangel letter.  Spencer interprets that holding too broadly.  In Olitsky I we held that the entire EEOC file was inadmissible,

---

[16]Olitsky I, 842 F.2d at 126.

[17]638 F.2d 873 (5th Cir. Unit A 1981).

[18]Id. at 881.

11

but we did not hold that each individual item within that file would be inadmissible in and of itself.  Here we are presented with only one document from that file.  Finding that the Mangel letter did not constitute conciliation material, we hold that the district court did not abuse its discretion in admitting that single letter into evidence.

3.  Rumors of Hank Roth's drug use.

In its response to a pretrial interrogatory from Olitsky, Spencer stated that Gene Brog, the President of Spencer Gifts, had heard rumors that Hank Roth, Olitsky's supervisor, had used drugs.  At trial, Olitsky cross-examined Brog, who approved Roth's decision to fire Olitsky, about those rumors and introduced Spencer's response to the interrogatory.  Brog testified that he did not investigate those rumors.  Olitsky maintained that, as Roth was younger than Olitsky, that evidence showed that Spencer treated younger employees more favorably than older employees and that Spencer's asserted reason for firing Olitsky was a pretext for age discrimination.

Spencer argues that the district court erred in admitting that evidence because (1) Olitsky did not establish a connection between the failure to investigate the rumors and Spencer's firing of Olitsky; (2) Olitsky did not prove that Roth actually used drugs; (3) Olitsky did not show a connection between Brog's approval of Roth's decision to fire Olitsky and the fact that Brog heard rumors of Roth's drug use; and (4) under FED. R. EVID. 403, any probative value of the evidence was substantially

12

outweighed by the danger of prejudice, confusion of the issues, and misleading the jury.  We are convinced that the evidence of Roth's rumored drug use was not unfairly prejudicial to Spencer, and we hold that the district court did not abuse its discretion in admitting it.

    4.  <u>Olitsky's open heart surgery</u>.

Olitsky testified that he underwent open heart surgery in February 1984 while searching for another job.  Spencer argues that the district court erred in admitting that testimony because it was irrelevant, and any probative value of that testimony was substantially outweighed by the danger of prejudice to Spencer.  Olitsky asserts that, like his testimony about being "blacklisted" following his success in the original trial of this case, the evidence of heart surgery was offered to rebut Spencer's contention that Olitsky failed to mitigate his damages.  As we noted above, Spencer did not clearly express to the district court whether or not it was making such a contention.  Thus, the district court did not abuse its discretion in admitting Olitsky's testimony.

B.  <u>Jury instructions</u>.

Spencer contends that two elements of Olitsky's <u>prima facie</u> ADEA case[19] were in dispute and that the district court erred in

_____

[19]In <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668, 677 (1973), the Supreme Court formulated an evidentiary procedure for race discrimination cases which has been adapted for ADEA cases.  First, the plaintiff must prove a <u>prima facie</u> case of age discrimination, which consists of evidence that the plaintiff:  (1) was discharged; (2) was qualified for the position; (3) was within

13

refusing to submit jury questions on those two elements. Spencer asserts that the district court should have submitted jury questions on (1) whether Olitsky was qualified for the position he held with Spencer and (2) whether Olitsky was replaced by someone outside the protected class. By refusing to submit those questions, Spencer argues, the district court usurped the province of the jury.

We rejected that argument in Walther v. Lone Star Gas Co..[20] In Walther, we stated:

> When the defendant has produced evidence of a nondiscriminatory reason for plaintiff's discharge, and plaintiff has had an opportunity to challenge that reason as pretextual, the trier of fact should proceed directly to the ultimate issue of whether the defendant intentionally discriminated against the plaintiff. The initial prima facie case is no longer relevant.
>
> Under the logic of Aikens, it is clear that the issue of whether a plaintiff made out a prima facie case has no place in the jury room. Instructing the jury on the elements of a prima facie case, presumptions, and the shifting burden of proof is unnecessary and confusing. Instead, the court should instruct the jury to consider the ultimate question of whether defendant terminated plaintiff

---

the protected class at the time of discharge; (4) was replaced by someone outside the protected class; or (5) by someone younger; or (6) show otherwise that his discharge was because of age. Bienkowski v. American Airlines, Inc., 851 F.2d 1503, 1504-05 (5th Cir. 1988). If the plaintiff proves a prima facie case, a presumption of discrimination arises which the defendant must rebut by articulating a "legitimate, nondiscriminatory reason for its disparate treatment of the plaintiff." Id. at 1505. If the defendant succeeds in rebutting the presumption, the plaintiff must prove that the defendant's articulated reasons are mere pretexts for discrimination. The plaintiff can do this either by showing that a discriminatory reason more likely motivated the defendant or by showing that the defendant's reason is unworthy of credence. Id. (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)).

[20]952 F.2d 119 (5th Cir. 1992).

14

because of his age.  To the extent our decisions before or after <u>Aikens</u> imply that the issue of prima facie case is a factual question for the jury to resolve, we reject such implications as dictum.[21]

The district court did not err in its instructions to the jury.

C.  <u>Olitsky's ERISA claim</u>.

Section 510 of ERISA prohibits employer action against an employee who participates in a pension benefit plan for "the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan."[22]  To recover under section 510, a plaintiff "need not show that 'the <u>sole</u> reason for his [or her] termination was to interfere with pension rights'; however, the plaintiff mush show that the employer had the 'specific intent to violate ERISA.'"[23]  Olitsky contended that Spencer violated section 510 by firing him within a few months before Olitsky would have met the ten-year vesting requirement for benefits under Spencer's pension plan, thereby causing him not to receive any benefits under the plan.

Gene Brog testified that when Spencer rehired Olitsky in 1981, Brog mistakenly believed, and told Olitsky, that because of Olitsky's break in service with Spencer between 1979 and 1981, Olitsky was not entitled to credit for his years of service prior to 1979, so that he would have to start a new ten-year vesting

---

[21]<u>Id</u>. at 126-27 (citations omitted).

[22]29 U.S.C. § 1140.

[23]<u>Clark v. Resistoflex Co., Div. of Unidynamics Corp.</u>, 854 F.2d 762, 770 (5th Cir. 1988) (quoting <u>Gavalik v. Continental Can Co.</u>, 812 F.2d 834, 851 (3d Cir.), <u>cert. denied</u>, 484 U.S. 979, 108 S. Ct. 495, 98 L. Ed. 2d 492 (1987)) (emphasis in original).

15

period.  Brog further testified that he did not learn that Olitsky had received credit for his prior years of service until after Olitsky was fired.  Hank Roth also testified that he did not know the status of Olitsky's vesting when he made the decision to fire Olitsky.  Spencer argues that there is thus no evidence that anyone involved in the decision to fire Olitsky knew that Olitsky was close to vesting when he was fired.

The district court did not submit Olitsky's ERISA claim to the jury.  Rather, the district court acted as fact-finder on that claim and found that Spencer had violated section 510.  The district court stated:

> [A]s I instructed the jury, I feel free to disbelieve the testimony of any witness, even if it is unimpeached.  I did not find Mr. Brog to be a credible witness, at least on this issue about pensions, and I am persuaded by all the circumstantial evidence provided by the plaintiff that there was specific intent in the timing of his discharge to deprive him of his vesting in the pension plan.

We accept a trial court's findings of fact unless they are clearly erroneous or influenced by an incorrect view of the law.[24]  Olitsky was fired shortly before the vesting of his pension benefits.  Spencer contends that Olitsky was fired because of poor work performance and that the vesting of benefits did not enter into its decision to fire him.  The district court chose not to give credence to the testimony of the individuals who made the decision to fire Olitsky, and reasonably inferred from the proximity of the date of firing to the date of vesting

---

[24]Branch-Hines v. Hebert, 939 F.2d 1311, 1317 (5th Cir. 1991).

16

that Spencer intended to deprive Olitsky of his benefits.  That finding was not clearly erroneous.

D.  Doubling of the front pay award.

The ADEA liquidated damages provision[25] states, in part:

Amounts owing to a person as a result of a violation of this Chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of Sections 216 and 217 of this Title; Provided, That liquidated damages shall be payable only in cases of willful violations of this Chapter.  In any action brought to enforce this Chapter, the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this Chapter, including without limitation judgments compelling employment, reinstatement, or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section.

Olitsky argues that a front pay award constitutes an "amount owing" under that provision, requiring the doubling of such an award as liquidated damages upon a finding of a willful violation of the ADEA.  We have not previously addressed that question, but six other circuits have rejected Olitsky's argument.[26]  Olitsky

---

[25]29 U.S.C. § 626(b).

[26]See Wheeler v. McKinley Enters., 937 F.2d 1158, 1163 n.2 (6th Cir. 1991) ("'Front pay' may be recoverable as well, but it cannot figure in the calculation of liquidated damages."); Graefenhain v. Pabst Brewing Co., 870 F.2d 1198, 1210 (7th Cir. 1989) ("Since front pay is a prospective remedy, an award of front pay damages is not an 'amount owing' for purposes of section 626(b)."); Cooper v. Asplundh Tree Expert Co., 836 F.2d 1544, 1556-57 (10th Cir. 1988) (finding that section 626(b), read in light of section 216(b) of the Fair Labor Standards Act, provides for two types of relief--"amounts owing" and other "legal or equitable relief"--and that front pay is included in the latter and is not subject to doubling); Blum v. Witco Chem. Corp., 829 F.2d 367, 382-83 (3d Cir. 1987); Dominic v. Consolidated Edison Co. of New York, Inc., 822 F.2d 1249, 1258-59 (2d Cir. 1987) (front pay is not "amount owing"; as an equitable award, it is not subject to doubling under section 626(b));

17

has not persuaded us that those circuits have interpreted that statute incorrectly. The district court thus did not err in refusing to double Olitsky's front pay award.

III.

CONCLUSION

The district court did not abuse its discretion in its evidentiary rulings, partly because of Spencer's attempts to conceal its trial strategy. The district court was correct in refusing to give jury questions on the elements of Olitsky's prima facie case, as those elements are not factual questions for the jury to decide. Spencer has failed to convince us that the district court's finding that Spencer violated section 510 of ERISA was clearly erroneous. In addition, the district court correctly refused to double Olitsky's front pay award, as such an award does not constitute an "amount owing" under the liquidated damages provision of the ADEA. For the foregoing reasons, the decision of the district court is

AFFIRMED.

---

Cassino v. Reichhold Chems., Inc., 817 F.2d 1338, 1348 (9th Cir. 1987) ("By the express terms of the statute, liquidated damages are an additional amount equal to the backpay and benefits award" and thus do not include front pay.), cert. denied, 484 U.S. 1047, 108 S. Ct. 785, 98 L. Ed. 2d 870 (1988).

18