Mark David **SARFF**

v.

**CONTINENTAL EXPRESS.**

Civ. A. No. G–94–731.

United States District Court,
S.D. Texas,
Galveston Division.

Aug. 11, 1995.

Darah Sue Headley, Houston, TX, for plaintiff.

Vicki A. Birenbaum, Sewell & Riggs, Houston, TX, for defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

This is an employment discrimination and wrongful termination suit in which Plaintiff Mark David Sarff ("Sarff") has filed suit against Defendant Continental Express ("Continental") pursuant to Title VII, 42 U.S.C. § 2000e *et seq.* Sarff alleges that his firing by Continental was in retaliation for complaints he made about alleged sexual harassment in the workplace and that he was discriminated against by Defendant because he is a man. Before the Court now is Defendant's Motion for Summary Judgment. For the reasons stated below, the Court finds that Plaintiff's case fails as a matter of law and that Defendant's Motion for Summary Judgement should be **GRANTED.**

### 1. Facts

The facts of this sad farce suggest to the Court that the friendly skies may indeed be considerably friendlier—and certainly more bizarre—on the ground than in the sky. Plaintiff Sarff began work for the predecessor of Continental as a customer service agent in Springfield, Illinois in 1986, and he transferred to Continental's operations at Ellington Field in Texas in 1990. It is clear

that almost from the beginning of his employment by Continental, Sarff received written customer complaints about his on-job behavior and attitude towards Continental's customers. During Sarff's first two years at Ellington Field, Lisa Kunkel was General Manager. On several occasions, Kunkel warned Sarff orally and in writing about customer complaints and that his conduct toward customers had to improve, or his job would be at risk.

Throughout the 1992–93 time frame, the record clearly indicates that Sarff's job performance seriously deteriorated. On November 5, 1992, a customer wrote Continental and complained of Sarff's "surly and condescending attitude," which "created much ill will" among a group travelling to Mexico that Sarff was in charge of handling. (See Defendant's Motion, at 5). On November 11, 1992, Continental received similar written complaints from another customer travelling to Mexico with a group. That customer remarked that Sarff's conduct was "unprofessional" and "embarrassing for everyone involved."

Such complaints continued throughout 1993. In January, 1993, a customer wrote that Sarff's lack of "professionalism and maturity" had created an extremely poor public relations problem for Continental. On April 27, 1993, Continental received yet another letter from a customer complaining about Sarff's "very rude" and "condescending" treatment of her 78–year old father. The writer observed that the incident was not the first time Sarff had been rude to her. A similar letter was received by Continental around June 30, 1993.

These repeated customer complaints led Diane Duffy, Defendant's Regional Director of Customer Service, to advise Sarff that if his behavior did not improve, appropriate steps would have to be taken against him. By all accounts, however, the problems continued to occur, and on July 22, 1993, Sarff

met with Ellington Field's General Manager—Robert Segari—to review his performance appraisal, which was very negative. The appraisal contained warnings that Plaintiff "was very antagonistic/provokes customers & coworkers," that he "receives *too many* customer complaints," (emphasis in original), and that he shows "no respect, compassion, caring for customers." (Defendant's Motion, at 6). Apparently undeterred by such a review, however, Sarff's behavior received yet another complaint from a Continental customer on August 26, 1993.[1]

Sarff's continued rudeness and inappropriate behavior on the job culminated in a written termination warning notice on September 1, 1993. In the notice, Segari advised Sarff that "any further infraction of the company's policies or procedures will result in immediate dismissal from employment by Continental Express." Eight days later, on September 9, 1993, Sarff first reported to Sigari that he had been subject to incidents that he interpreted as sexual harassment on the job. Sarff told Segari that he had found a pair of earrings placed in a coffee mug in his mailbox at work. In Sarff's view, whoever placed the earrings in his coffee mug "was impugning me as a man in general." (Sarff Deposition, at 185). Sarff claims that prior to the earring event, he had found Calvin Klien ads clipped from Cosmopolitan and Vogue magazines in his mailbox, one a week for seven weeks. (Id. at 191). He claims that the ads began appearing in his mailbox in early August, 1993, and were also intended to "impugn [his] manhood."

One week later, Sarff called Dan Casey, Associate General Counsel for Continental Airlines, a separate corporation from Continental Express, and reported that a brush was left in his coffee mug. Defendant admits that such a call was entirely appropriate in the circumstance, but the event apparently triggered a negative reaction from Sarff's immediate supervisor, Dave Rescino, who

1. Plaintiff makes the apparent argument in this case that this complaint letter is suspect because it was solicited by Defendant from the customer herself. However, Defendant points out that the customer initiated contact with Continental by phone and was only then asked to place her complaint in letter form. (Defendant's Reply, at

4). The Court finds that any suggestion that Continental somehow orchestrated a negative file on Plaintiff is wholly unsubstantiated by the record, which overwhelmingly suggests that Sarff repeatedly acted in an extraordinarily unprofessional manner with customers.

questioned why he had called the legal department to report a problem.

By all accounts, the problems at Continental Express quickly escalated to the point that Plaintiff was fired by Defendant. On September 22, 1993, Segari conducted an investigation of the earring allegation and then held a mandatory station meeting, at which he reviewed with the employees the company's written policy regarding sexual harassment. Almost incredibly, on the very day following this seminar, Sarff made a gesture of unzipping his pants to Barbara Fondry, a female employee and supervisor. More importantly, six weeks following this incident, Plaintiff Sarff's conduct entered a new realm that this court can only describe as bizarre. On November 6, 1993, Sarff and Fondry—who both appear to have behaved throughout in an exceptionally inappropriate and highly immature manner—were witnessed "rubbing" against one another, as Ms. Fondry was observed to sit on Plaintiff's lap and "wiggle." Apparently in response to this suggestive behavior, Sarff invited Ms. Fondry to "lick my scrotum," to which Ms. Fondry replied that he should grow one. (Defendant's Motion, at 11). This sexual horseplay culminated later that day when, in the context of a discussion about tatoos, Sarff offered that if Ms. Fondry would shave her vagina and obtain a tatoo there, he would lick the scabs that formed in her sexual areas as the tatoos healed. (Id.). This behavior was reported to Segari, and Sarff was terminated on November 12, 1993, following an investigation.

### 2. Standard of Review

■ Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A fact is material if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists if there is a genuine issue for trial that must be decided by the trier of fact. In other words, summary judgment should not be granted if the evidence indi-

cates that a reasonable fact-finder could find in favor of the nonmoving party. *Id. See also Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ In ruling on a Motion for Summary Judgment, the Court must accept the evidence of the nonmoving party and draw all justifiable inferences in his favor. Credibility determinations, weighing of the evidence, and the drawing of reasonable inferences are left to the trier of fact. *Anderson v. Liberty Lobby, supra*, 477 U.S. at 255, 106 S.Ct. at 2513.

■ Under Fed.R.Civ.P. 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once this burden is met, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita, supra*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Leonard v. Dixie Well Serv. & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir.1987).

■ Where the moving party has met its Rule 56(c) burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no *genuine issue for trial.*" *Matsushita, supra*, 475 U.S. at 586–87, 106 S.Ct. at 1356 (quoting Fed.R.Civ.P. 56(e)) (emphasis in original). As stated before, the nonmovant in this case did not timely file a response to the Defendants' motions for summary judgment.

### 3. Analysis

As extreme as the facts of this case are, the Court finds that this case presents a difficult and close question for summary judgment that the Court has carefully and thoroughly considered. The Court has been

aided in this regard by the outstanding efforts of Plaintiff's counsel, whose tireless and able efforts on behalf of her client are admirable and greatly appreciated by the Court. The Court is particularly appreciative in this case because the facts present an employment situation that deeply troubles this Court. Although Plaintiff's Complaint is framed exclusively in terms of discrimination against him because he is male, it is indisputable that running throughout the pleadings, and certainly throughout the treatment Sarff encountered in his work environment in the alleged instances of sexual harassment, is a strong undercurrent of homophobia.

█ The Court is, of course, fully aware that neither Title VII nor Texas state law afford relief for employment discrimination based on sexual orientation. *See, e.g., Smith v. Liberty Mutual Ins. Co.*, 395 F.Supp. 1098 (N.D.Ga.1975), *aff'd* 569 F.2d 325, 326–27 (5th Cir.1978); *Polly v. Houston Lighting & Power Co.*, 825 F.Supp. 135, 137 n. 2 (S.D.Tex.1993). The scope of the law, however, is not coterminous with the scope of ethical or humanitarian duties. One may clearly have a moral duty or a duty under natural law to come to the aid of a drowning man, but one clearly has no legal duty whatsoever and may calmly walk away from engaging in even the simplest human action in such a situation without incurring any legal liability. The law, that is, does not reach those private decisions of duty and good conscience that are properly left to individuals to work out as their own private lights so dictate.

█ Similarly, an employer can clearly fire an employee for being gay, and such an employee has *no* statutory protection in the vast majority of states whatsoever from such action or from being harassed by a member of his or her own sex. *See Polly, supra*, 825 F.Supp. at 135. Nevertheless, this Court cannot pass over this legal fact in this case without commenting that the absence of a legal duty on an employer's part is not coterminous with the scope of a duty of good faith and fair dealing. This Court deeply believes that discrimination against *all* Americans, despite their gender, race, religion, or sexual orientation, is profoundly wrong and that it violates the fundamental and essential right of individuals to engage in the full rights and privileges of citizenship. In addition, it makes little economic sense for employers to discriminate against the 15–25 million gay and lesbian people in this country, many of whom hold positions at the highest levels of professional, scientific, academic, and political enterprises.

In this case, however, the strong suggestion that Sarff encountered a work environment hostile to his sexual orientation is greatly outweighed by the reality that his own highly inappropriate—and oft-repeated—behavior was the determining factor in his dismissal by Continental Express.

### 1. The Retaliatory Discharge Claim

█ Plaintiff Sarff contends that he was discharged by Defendant because he opposed the sexual harassment he alleges was directed against him. Section 703(a)(1) of Title VII of the Civil Rights Act of 1964 provides in relevant part:

It shall be an unlawful employment practice for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1).

A Title VII claim requires *intentional* discrimination, and under the familiar *McDonnell Douglas/Burdine* framework, the Court employs a three-part test designed to determine the motivation of the defendant in taking the challenged action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255 n. 10, 101 S.Ct. 1089, 1095 n. 10, 67 L.Ed.2d 207 (1981). First, the plaintiff is required to establish a prima facie case wherein he must establish the elements of the discrimination claim. If the plaintiff meets these requirements, a presumption of discrimination arises. *Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955 (5th Cir.1993).

█ Second, the defendant may then rebut this presumption by articulating a legitimate, nondiscriminatory reason for the al-

leged discriminatory action. *Olitsky v. Spencer Gifts, Inc.*, 964 F.2d 1471 (5th Cir. 1992). An employer meets this burden by proffering admissible evidence of an explanation that would be legally sufficient to justify a judgment for the employer. *Guthrie v. Tifco Indus.*, 941 F.2d 374, 376 (5th Cir. 1991). The defendant need not *persuade* the trier of fact that there was no intentional discrimination; he need only produce evidence on that point. *St. Mary's Honor Center v. Hicks*, — U.S. ——, —— - ——, 113 S.Ct. 2742, 2747–48, 125 L.Ed.2d 407, 416 (1993).

■ Third, once the employer satisfies this burden, the presumption of discrimination established by the employee's prima facie case dissolves. *Burdine, supra,* 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10. The employee's burden of persuasion then arises, and the plaintiff must produce evidence that the employer's proffered reasons are mere pretexts, the real reason for the action having been based on an impermissible animus. *Id.* at 256, 101 S.Ct. at 1095; *Bodenheimer, supra,* 5 F.3d at 959.

■ In this case, the Court finds that even where the record as a whole is looked at in the light most favorable to the nonmoving party, no reasonable fact finder could determine that the Plaintiff has made a prima facie case of retaliatory discrimination. A plaintiff must show three things to establish a prima facie case of retaliation: (1) he engaged in an activity protected by Title VII; (2) an adverse employment action followed; and (3) there was some causal connection between the activity and the adverse action. *Collins v. Baptist Memorial Geriatric Center,* 937 F.2d 190, 193 (5th Cir.1991). The plaintiff need not show that the protected activity was the sole factor motivating the adverse action, but he must show that "but for" the protected activity, he would not have been subjected to the action he claims is discriminatory. *Id.; Jones v. Flagship Int'l,* 793 F.2d 714, 724 (5th Cir.1986).

An analysis of Sarff's claim must begin with the reality that the conduct about which Sarff complained to Continental is not prohibited by Title VII. Sarff's complaints consisted of finding items which he suspected

were planted by a male co-worker—Matt Shipwash—consisting of seven advertisements, two pairs of earrings, lipstick, and a brush, which he believed to be a make-up brush. As Sarff stated in his EEOC complaint, "I believed that the actions directed toward me by Matt were sexual harassment because he simply presumed that I am gay and proceeded to act upon a stereotype to humiliate me."

■ As stated above, however, Title VII does not forbid sexual discrimination based on sexual orientation. *Smith,* 395 F.Supp. at 1098; *Polly,* 825 F.Supp. at 135; *see also, Williamson v. A.G. Edwards & Sons, Inc.,* 876 F.2d 69 (8th Cir.1989) (affirming summary judgment for the Defendant on the basis that Title VII does not prohibit discrimination against homosexuals), *cert. denied,* 493 U.S. 1089, 110 S.Ct. 1158, 107 L.Ed.2d 1061 (1990). Nor does Title VII cover harassment of a male by a male. *Garcia v. Elf Atochem N. Am.,* 28 F.3d 446 (5th Cir.1994); *Ulane v. Eastern Airlines,* 742 F.2d 1081 (7th Cir.1984). Whether this Court agrees with the ethical position of this rule or not, it is clearly bound by the authority surrounding the law of Title VII and must act accordingly. Thus, Sarff did not complain of any activity protected by Title VII, for even if he proved that all the events he alleges happened did, in fact, occur, Title VII would still provide no protection for him.

Secondly, Sarff cannot demonstrate that any causal link exists between his termination by Continental and his complaints about his workplace. The overwhelming evidence in this case demonstrates that Sarff was a seriously disruptive and difficult employee who had been repeatedly warned about his inappropriate behavior. It is critically important in this case that Sarff was placed on termination warning *before* he lodged his complaints about Matt Shipwash's behavior. This warning was itself the culmination of a long series of complaints and warnings that also preceded Sarff's complaints. The termination warning clearly and unequivocally placed Sarff on notice that any further infraction of the expected code of conduct at Continental would result in his

termination. It is beyond the bounds of reason that any employee could have received such a notice and then acted in the manner Sarff did—and his behavior is undisputed—without that employee expecting to be terminated.

■■■ Finally, the Court finds that Sarff has not, and cannot, demonstrate any evidence whatsoever that suggests that Continental's action was pretextual or that but for his complaints, Sarff would not have been terminated. Indeed, this Court cannot imagine how Sarff could *fail* to expect to be fired after inviting a co-worker to "lick [his] scrotum" and offering to lick the scabs on her genital tatoo once he had been placed on termination notice and received severe and continuing complaints about his behavior. Continental has both a right and a responsibility to maintain a workable and decent environment for its employees, and this right includes the freedom to terminate those employees who are continually disruptive and inappropriate, particularly after the employees have been given notice of their wrongdoing. Extremely inappropriate conduct at work is a legitimate, nondiscriminatory, nonpretextual reason for terminating employment. *McNairn v. Sullivan*, 929 F.2d 974 (4th Cir.1991).

For these reasons, Defendant's Motion for Summary Judgment against Plaintiff's retaliatory discharge claim is **GRANTED.**

*2. The Disparate Treatment Title VII Claim*

■■■ In a disparate treatment case, the burden-shifting standard of proof places the burden on the Plaintiff to establish illegal motive or intent on the part of his employer under the test set out in *McDonnell Douglas, supra,* 411 U.S. at 792, 93 S.Ct. at 1819. Under this test, the Plaintiff must establish a prima facie case of discrimination by showing that: (1) he is a member of a protected category; (2) he was the object of an adverse employment action; and (3) there is a causal nexus between the protected category and the adverse action. *Armstrong v. City of Dallas,* 997 F.2d 62, 65 n. 2 (5th Cir.1993). In a case such as this, where the Plaintiff claims he was treated differently from other employees based on a specific incident, a causal nexus may be shown by proving that similarly situated employees outside of the protected class were treated more favorably. *See Lo v. FDIC,* 846 F.Supp. 557, 562 (S.D.Tex.1994).

■■■ In this case, the Court firmly believes that Plaintiff cannot demonstrate a prima facie case. Sarff's gender claim places him within a protected class of Title VII, and he was certainly the object of an adverse employment action. However, to show a causal connection for purposes of establishing a prima facie case, Sarff must produce evidence that Continental, in terminating him, treated *similarly situated* females more favorably than it did him. *McDonald v. Santa Fe Transp. Co.,* 427 U.S. 273, 283, 96 S.Ct. 2574, 2580, 49 L.Ed.2d 493 (1976). The evidence is uncontroverted that there were no similarly situated females involved in the actions that make up this case, for Sarff was the only employee who had a termination notice in his file. Secondly, it is also clear that Ms. Fondry received a written reprimand in her personnel file for her participation in the conversation and was ordered to attend a company sponsored program on sexual harassment. She also withdrew from her position as a supervisor after receiving the reprimand.[2]

Yet, even if Sarff could make out a prima facie case, he cannot overcome the undisputed evidence that Continental had a legitimate, non-discriminatory reason for terminating him. As outlined above, Sarff's record at Continental displays a deteriorating performance that is riddled with customer

---

**2.** In addition, Defendant has presented deposition evidence in this case indicating that other women who have engaged in sexual harassment have been severely disciplined and/or terminated by Continental. The Court's reading of this material again suggests that Continental's ground operations are freewheeling ventures in which exhibitionism seems to accompany job performance. The Court particularly notes the case of Belinda Johnson, a Continental employee in Alexandria, Louisiana, who "had spoken on the radio to the pilots in a manner which offended some people in the station. She had also allegedly had some weird infatuation with her breasts and decided to place them on top of somebody's head." (Defendant's Reply, Exhibit 5, at 18).

complaints, highly negative managerial complaints, and a written termination warning. The Court again stresses that *all* these factors precede the crucial, final events that make up this case. It is simply inconceivable to this Court that an employer could not legitimately terminate en employee with Sarff's record after giving him written termination notice. The allegation that Continental's true motive for firing him is because he is a male strikes this Court as, at best, unbelievable and unsupported by *any* competent summary judgment evidence.[3] Thus, Defendant's Motion for Summary Judgment against Plaintiff's Title VII disparate treatment allegation is **GRANTED.**

For these reasons, the Court finds that Defendant's Motion for Summary Judgment is **GRANTED,** and Plaintiff's claims of retaliatory discharge and disparate treatment under Title VII are hereby **DISMISSED WITH PREJUDICE.** Each party is to bear his or its own taxable costs. It is further **ORDERED** that the parties file no further pleadings on this matter, including motions to reconsider and the like. Instead, the parties are instructed to seek whatever relief they feel themselves entitles in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**

### FINAL JUDGMENT

For the reasons set forth in the Court's Order entered this date, the above-captioned cause of action is hereby **DISMISSED WITH PREJUDICE.** Each party is to bear his or its own taxable costs.

**THIS IS A FINAL JUDGMENT.**

**IT IS SO ORDERED.**

---

3. The Court must take note in this regard that the invective between the parties seems to have spread to some degree to allegations between the attorneys in this case that Defendant's counsel has engaged in inappropriate behavior that has resulted in tainted deposition evidence. The Court finds that no evidence supports this contention. In fact, the Court has found Defendant's attorney to be entirely professional and that her briefs in support of her client's position are models of clarity and concision.